```
                          UNITED STATES DISTRICT COURT
                          SOUTHERN DISTRICT OF FLORIDA

                          CASE NO. 07-60748-Civ-UNGARO-BENAGES
                          MAGISTRATE JUDGE P. A. WHITE
JERRY DOTY,               :

        Petitioner,       :

v.                        :      REPORT OF
                                 MAGISTRATE JUDGE
JAMES McDONOUGH,          :

        Respondent.       :
_____
```

Jerry Doty has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his convictions for false imprisonment, violation of injunction for protection against domestic battery, and battery entered on a jury verdict in Broward County Circuit Court, case no. 01-8087CF10A.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of this petition (DE#1), the Court has the response of the state to an order to show cause with multiple exhibits (DE#s14,16,18).

The petitioner makes the following two claims:

> 1. He was denied effective assistance of counsel, where his lawyer failed to object to the prosecutor's statement during closing argument. (DE#1:6).

      2.    He was denied effective assistance of counsel, where his lawyer failed to impeach the victim regarding her testimony that the petitioner entered her residence through the door and not a window.

Briefly, the petitioner was charged by Information with burglary of a dwelling with a battery (Count I), two counts of sexual battery (Counts II-III), false imprisonment (Count IV), violation of injunction for protection against domestic violence (Count V), and battery (Count VI). He proceeded to trial where he was acquitted as to Counts I, II, and II, and found guilty as to Counts, IV, V, and VI, following a jury verdict. (DE#18:Exs.2-3). On January 13, 2003, the petitioner was adjudicated guilty, and sentenced to five years in prison as to Count I, a consecutive one year term of imprisonment as to Count V, followed by a consecutive term of one year probation as to Count VI. (DE#18:Ex.4).

On November 3, 2004, the Fourth District Court of Appeal affirmed the petitioners convictions, but vacated the sentences, remanding the case for a new sentencing proceeding. Doty v. State, 884 So.2d 547 (Fla. 4 DCA 2004); (DE#18:Ex.11). Pursuant to the appellate court's remand, the petitioner was resentenced to a term of five years in prison as to Count IV, and 321 days time-served as to Count V, with credit for time served in county jail and time served in prison prior to his resentencing. (DE#18:Ex.12). In accordance with the appellate court's remand instructions, the court specifically declined the state's invitation to adjudge the petitioner guilty as to Count VI.  The petitioner appealed, and counsel thereafter filed an Anders v. California, 386 U.S. 738 (1967) brief, stating that no arguable error requiring reversal existed in the record. (DE#18:Ex.17:3). Following appellate counsel's motion to withdraw, the petitioner filed a notice of

voluntary dismissal, which was granted by the appellate court on April 19, 2006. (Id.).

Following collateral petitioners not relevant to resolution of this federal habeas petition, the petitioner filed his first motion for postconviction relief and amendment thereto pursuant to Fla.R.Cr.P. 3.850, raising the same claims raised in this habeas petition. (DE#18:Exs.14-16). Following the state's response thereto, the trial court entered an order summarily denying the claims raised in this federal petition. (DE#18:Ex.18). The petitioner appealed, and the denial was *per curiam* affirmed without requiring a response from the state. State v. Doty, 954 So.2d 37 (Fla. 4 DCA 2007). (DE#18:Ex.20). The petitioner then came to this court filing this federal habeas corpus petition on May 24, 2007.[1] (DE#1).

The respondent correctly concedes that this petition was filed within the one-year limitations period of 28 U.S.C. §2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Artuz v. Bennett, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period). In addition, the respondent is correct in its concession that the petitioner's claims are exhausted and ripe for federal review. Anderson v. Harless, 459 U.S. 4 (1982)(issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted).

It should also be noted that the respondent rightfully does not challenge this court's jurisdiction to entertain this federal petition. Title 28, U.S.C. §2254(a) gives the district courts jurisdiction to entertain petitions for habeas corpus relief only

---

[1] See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

3

from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." The "in custody" requirement is satisfied if a petitioner is incarcerated as a result of the conviction or sentence under attack at the time the petition is filed. Carafas v. LaVallee, 391 U.S. 234 (1968). On the other hand, if the sentence imposed for a conviction has fully expired, the conviction is no longer subject to habeas corpus attack, even if the possibility exists that it may be used to enhance the sentences imposed for any subsequent crime of which the petitioner may be convicted. Maleng v. Cook, 490 U.S. 488 (1989)(holding that a petitioner is not in custody and thus cannot challenge a conviction when the sentence imposed for that conviction has expired).

The petitioner filed this habeas petition on May 24, 2007, while he was still confined at the Moorehaven Correctional Facility. Review of the Florida Department of Corrections, Inmate Information Database, located at http://www.dc.state.fl.us/, reveals that since the commencement of this proceeding, the petitioner was released from prison on August 30, 2007. However, because he was incarcerated when he filed this petition and collateral consequences continue to attach as the result of the convictions at issue, the Court has jurisdiction to entertain the petition and it is not moot, despite the petitioner's subsequent release. Maleng v. Cook, supra.

With regard to review of the claims on the merits, federal habeas relief for a state prisoner is available only upon a showing that the prisoner's confinement violates the United States Constitution or other federal law. Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts to grant habeas corpus relief. Now under 28 U.S.C. § 2254(d), an application for a writ of habeas corpus

pursuant to the judgment of a state court shall not be granted by a federal court unless the decision is "contrary to" or is an "unreasonable application of" "clearly established" Supreme Court precedent.[2]  See Williams v. Taylor, 529 U.S. 362, 391 (2000).

As indicated in §2254(d), there are two distinct avenues for granting federal habeas relief. See Hall v. Head, 310 F.3d 683, 690 (11 Cir. 2002), citing, Williams, 529 U.S. at 404. First, relief may be available if the state court decision is "contrary to" clearly established United States Supreme Court precedent. For example, "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," the decision is contrary to Supreme Court precedent. Id., quoting, Williams, 529 U.S. at 405. Alternatively, "if the state court confronts a set of facts that are materially indistinguishable from a [relevant Supreme Court decision and] arrives at a result different" from that decision, such a result is also contrary to Supreme Court precedent. Id., quoting, Williams, 529 U.S. at 406.

Second, a petition for habeas relief may be granted if the state court decision involved an "unreasonable application" of Supreme Court precedent. Id. at 691. "A state-court decision that correctly identifies the governing legal rule but applies it

---

[2]Pursuant to 28 U.S.C. § 2254(d), as amended by the AEDPA,

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

unreasonably to the facts of a particular prisoner's case" satisfies the "unreasonable application" clause of § 2254(d)(1). Id., quoting, Williams, 529 U.S. at 407-08. The proper inquiry is whether the state court applied federal law in an "objectively unreasonable" manner. Williams, at 409. Finally, §2254(d)(1) provides a measuring stick for federal habeas courts reviewing state court decisions. Hall, 310 F.3d at 683. That measuring stick is "clearly established Federal law." 28 U.S.C. § 2254(d)(1). Id. In the habeas context, clearly established federal law "refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Id., citing, Williams, 529 U.S. at 412. Further, §2254(e)(1) provides for a highly deferential standard of review for factual determinations made by a state court in that a state court's factual findings are presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11 Cir. 2001), cert. denied, ___ U.S. ___, (2002).

In this habeas proceeding, the petitioner asserts that counsel was ineffective for two specified reasons. In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the

6

sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-204 (2001).

The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." Hardwick v. Crosby, 320 F.3d 1127, 1161 (11 Cir. 2003), citing Chandler v. United States, 218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. den'd,___ U.S. ___, 123 S.Ct. 70 (2002), quoting, Strickland v. Washington, supra at 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992).

In **claim one**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to object to the prosecutor's improper comments during closing argument.[3]

---

[3]This court finds that the remaining challenged comments were proper as they were argument by the prosecutor regarding the law to be applied, the credibility of witnesses, as well as, the evidence and facts adduced at trial.

(DE#1:6).

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the actions rendered the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-45 (1974); Hall v. Wainwright, 733 F.2d 766, 773 (11 Cir. 1984). In assessing whether the fundamental fairness of the trial was compromised, the totality of the circumstances are to be considered in the context of the entire trial. Hance v. Zant, 696 F.2d 940 (11 Cir.), cert. denied, 463 U.S. 1210 (1983). "Such a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." Williams v. Weldon, 828 F.2d 1018 (11 Cir.), cert. denied, 485 U.S. 964 (1988).

When this claim was raised in the state forum, the state court denied relief finding the claim to be without merit. (DE#18:Ex.18). As noted previously in this Report, the foregoing holding was affirmed without explanation. Doty v. State, 954 So.2d 37 (Fla. 4 DCA 2007). (DE#18:Ex.20).

The petitioner first claims that the prosecutor improperly commented that the victim, Deborah Bennett, stated the petitioner came through the window and that the police testified that the screen was removed. These comments, however, were not improper as

---

To the extent the petitioner challenges the comments made by the prosecutor at sentencing or resentencing, that claim is moot as the petitioner is not now attacking his sentences, as they are now fully served. See e.g., Hernandez v. Wainwright, 796 F.2d 389 (11th Cir. 1986)(petition dismissed as moot since petitioner released from custody and no possibility that length of sentence would have collateral consequences).

they were comments on the facts adduced at trial.[4] Specifically, the victim testified that she saw the petitioner remove the window screen from her bedroom. (T.223). At that point, Bennett ran to the window, and attempted to shut it in order to prevent the petitioner from entering the residence. (T.223). However, the petitioner forced his way through the window, knocking Bennett to the floor. (Id.).

The petitioner next alleges that it was improper for the prosecutor to comment on the fact that the petitioner tore off Bennett's panties. However, at trial, Bennett testified that he took of her underwear and was on top of her, choking her. (T.237). While it appears that Bennett did not state that the panties were removed forcibly, nevertheless, given the violent nature of the encounter as evidenced by the facts adduced at trial, such a comment was not unreasonable and could be inferred from the evidence. Whether the prosecutor's comment was strong, it is evident as will be discussed *infra* the outcome of the trial was not affected by this comment.

The petitioner next claims that the prosecutor improperly made reference to a non-existent Texas restraining order. The testimony at trial, however, involved a Florida injunction which was admitted at trial. (T.346-348). The transcript of the petitioner's post-arrest statement was introduced into evidence and played to the jury. (T.365). During his post-arrest interview, the petitioner told law enforcement officials that he previously had a domestic problem with a woman in Texas. (T.377-379). According to the petitioner, his then girlfriend called police, rubbed her neck, and falsely accused him of choking her. (T.379). The petitioner stated that he moved to

---

[4] Even if the comment were not supported by the record, the petitioner would still not be entitled to relief. It appears that this testimony was provided in support of the charge of battery, an offense for which the jury acquitted the petitioner. Under these circumstances, no prejudice has been established arising from counsel's failure to pursue this issue.

9

Florida and his Texas girlfriend then followed him, and they have now remained friends, although he has not spoken to her in approximately one year. (T.379). Under these circumstances, no showing has been made that the fundamental fairness of the petitioner's trial was compromised.

The evidence adduced at trial established that Bennett met the petitioner while she was working in the emergency room of Memorial Regional Hospital and the petitioner came in as a patient. (T.209-210).[5] After seven months, the relationship ended because the petitioner kept pressuring Bennett about spending the night and because he kept coming by her house on a daily basis. (T.211-13). They got back together twice, but ended the relationship finally after they broke up a third time. (T.213). They both got restraining orders to stay away from each other, but the orders were violated because the petitioner continued coming over to Bennett's house. (T.214).

On February 23, 2001, the petitioner contacted Bennett by phone, but when Bennett advised him that she did not wish to speak with him, the petitioner continued calling until Bennett eventually did not pick up the calls and turned her phone off. (T.216). Later that evening, the petitioner tried to get into Bennett's home. (T.217-18). The petitioner tried getting through the front door, and then through the bedroom window. (T.218-220). Bennett kept telling the petitioner to go away, but he did not comply. (Id.). Thereafter, Bennett heard the sound of breaking glass or metal and went into the bedroom at which time she observed the petitioner remove the screen on the window and force his way into the room, knocking Bennett down. (T.223). He started choking Bennett, telling her that she was

---

[5] The transcripts of the trial in the state forum have been provided by the respondent and are docketed in this case at DE#16.

going to pay, and calling her derogatory names. (T.224).

When Bennett tried to escape, the petitioner grabbed her by the arm and threw her to the ground. (T.228). She tried to scream, but he started to choke her again, and told her that she could scream all she wanted because, by the time the police arrived, her neck would be snapped. (T.228). The petitioner then put Bennett on a lawn chair, pressing his face into her stomach. (T.29). Bennett kept pleading for him to release her, but he refused, eventually falling asleep on in her lap. (T.230-231). When Bennett tried to move, however, the petitioner woke up and refused to release her. (T.231).

Bennett eventually went back inside the house and tried to get ready for work, but the petitioner did not permit her to do so, forcing her to have non-consensual sexual intercourse. (T.235-36). The petitioner then fell asleep on her bed. (T.238-39). At around 8:20 in the morning, Bennett called police, at which time she was taken to a Sexual Assault Treatment Center for examination. (T.243). Bennett testified that as a result of the sexual assault, she received bruises to her forehead, back, thighs, knees, and elbows. (T.252).

Nurse Jean Swaby with the Sexual Assault Treatment Center in Ft. Lauderdale testified that she examined Bennett, noting bruises on the right side of Bennett's neck, consistent with fingermarks, as well as to the lower jaw, forehead, right elbow, right shoulder, and a scratch mark on Bennett's back. (T.325-331). Nurse Swaby also testified that there were also injuries to Bennett's vagina. (T.331-334). Vaginal swabs were taken which revealed the presence of spermatozoa. (T.340). Oral swabs taken from the petitioner matched the spermatozoa found in Bennett. (T.419,421).

The petitioner was arrested and, after being advised of and waiving his constitutional rigs, he stated that he was aware there was a restraining order against him, but indicated he had drunk four or five drinks that night when he entered Bennett's house through the front door. (T.365-385). According to the petitioner, they spoke and screamed at each other for a while, eventually having consensual sexual intercourse in the shower, during which he stuck his finger in her rectum. (Id.). He claims Bennett never told him to stop, denied choking Bennett, but stated that he held her back because she was swinging at him and that he "might have choked her," but did not "attack her." (T.365-385).

The petitioner's generalized assertion that the prosecutor improperly vouched for the truthfulness of witness' testimonies is based on a misapprehension of that concept. Improper vouching occurs when an attorney indicates a personal belief or disbelief in a witness' credibility, either by blunt assertion or the implication of special knowledge. Mason v. Mitchell, 95 F.Supp.2d 744 (N.D. Ohio 2000) and cases cited at 781-82. On the other hand, "the prohibition against vouching does not forbid prosecutors from arguing credibility, which may be central to the case; rather, it forbids arguing credibility based on the reputation of the government officer or on evidence not before the jury." United States v. Hernandez, 921 F.2d 1569, 1573 (11 Cir. 1991). Since the prosecutor in this case expressed no "explicit personal assurances or references to evidence not before the jury," id., improper vouching did not occur.

Moreover, the now challenged remarks were perhaps strong, but under the facts of this case were fair comment on the evidence presented at trial and did not render the trial fundamentally unfair. Moreover, even if the prosecutor's comments could possibly

12

be viewed as having the potential to prejudice the jury, the comments did not impair the fundamental fairness of the petitioner's trial and did not contribute to the convictions, especially in light of the trial court's instructions to the jury to rely on the evidence presented and not the comments of counsel when arriving at its verdict. It is generally presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987). Since the prosecutor's comments did not fundamentally taint the trial and contribute to the convictions, the trial court's failure to grant a mistrial was not improper. See Ford v. State, 2001 WL 1044912, *3 (Fla. 2001)(holding that a mistrial based on prosecutorial comments is appropriate only where a statement is so prejudicial that it vitiates the entire trial).

    Finally, given the strength of the evidence of the petitioner's guilt, which included the petitioner's DNA evidence, as well as, the petitioner's post-arrest statement, it is apparent that the prosecutor's statements were at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict). Accordingly, the state appellate court's rejection of this claim is not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[6] Relief must therefore be denied pursuant to 28 U.S.C. §2254(d).  Williams v. Taylor, supra.

---

[6] An appellate court's decision constitutes an "adjudication on the merits," and is thus entitled to deference under the Antiterrorism and Effective Death Penalty Act (AEDPA) for purposes of subsequent federal habeas corpus review, even when the state court does not issue an opinion providing any discussion with respect to the claim. Wright v. Secretary for Dept. of Corrections, 278 F.3d 1245 (11 Cir. 2002), cert. denied, 538 U.S. 906 (2003).

In **claim two**, the petitioner asserts that counsel was ineffective for failing to impeach the state's key witness, Bennett, regarding her inconsistent statements that the petitioner entered the residence through the door and not a window. According to the petitioner, the victim Bennett's testimony during direct examination that the petitioner entered through the window of her residence, contradicted her testimony during cross-examination where she stated that he entered through the back door. (T.283).

Review of Bennett's testimony in its entirety reveals that the petitioner is taking Bennett's testimony out of context. First, Bennett testified that on the date in question, the petitioner showed up at her residence and started banging on the front door. (T.287-292). She was asleep and was awakened by the sound of banging on the back door of her residence. (<u>Id</u>.). Bennett then told the petitioner to go home, that he was not coming into her residence. (T.291-292). Bennett further testified that after telling him to go home, the petitioner got in his Jeep and left. (T.292). As she was falling asleep, however, the petitioner returned and was again attempting to gain entry into her home through a window. (T.292-293,297).

Cross-examination by defense counsel further reveals that counsel attempted on several occasions to impeach and call into question Bennett's credibility by constantly pointing out the inconsistencies in her testimony at trial with that as contained in her deposition, and attacking her recollection of the events and her motive for testifying. (T.262-324).

Given the evidence adduced at trial, the petitioner provides no meaningful explanation of the manner in which the impeachment of Bennett's testimony regarding the petitioner's point of entry into

14

the residence would have changed the outcome of the trial. Under federal law, bare and conclusory allegations of ineffective assistance of counsel are insufficient to require a hearing or further consideration. Ferguson v. United States, 699 F.2d 1071 (11 Cir. 1983); United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982). When the claim was raised in the state forum, it was properly denied on the basis that the claim was devoid of merit. Under these circumstances, the petitioner cannot establish deficient performance or prejudice arising from counsel's failure to further pursue this issue. Thus, this claim warrants no federal relief, as the trial court applied the appropriate constitutional principles to the facts, and arrived at a "reasonable" result. Williams v. Taylor, supra.

In addition, federal law also holds that tactical or strategic choices cannot support a collateral claim of ineffective assistance. McNeal v. Wainwright, 722 F.2d 674 (11 Cir. 1984); United States v. Costa, 691 F.2d 1358 (11 Cir. 1982). Decisions whether to call a particular witness or not to cross-examine certain witnesses are generally questions of trial strategy which will not support habeas corpus relief. United States v. Costa, supra.

For the foregoing reasons, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 13th day of February, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

```
cc:   Jerry Doty, Pro Se
      24180 Hinesley Road
      Sheridan, IN 46069

      Daniel P. Hyndman, Ass't Atty Gen'l
      Office of the Attorney General
      1515 North Flagler Drive, #900
      West Palm Beach, FL 33401-3428
```